# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| NNEKIA ELLIS, <br><br> PLAINTIFF, <br><br> V. <br><br> KNAPP INC., <br><br> DEFENDANT. | Civil Action No.: _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Nnekia Ellis ("Plaintiff") respectfully submits the following Complaint:

## INTRODUCTION

1. Plaintiff is a former employee of Defendant Knapp Inc. ("Knapp Inc." or "the Company"). Plaintiff brings this action pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII") to correct the unlawful employment practices alleged herein. Plaintiff seeks declaratory and injunctive relief, equitable relief, damages, and attorneys' fees and costs.

1

## JURISDICTION AND VENUE

2.	Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

3.	This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b), because the unlawful conduct giving rise to the claims occurred in this District.

## THE PARTIES

4.	Plaintiff is a resident of Georgia and submits herself to the jurisdiction of this Court.

5.	Defendant Knapp Inc. is a domestic profit corporation licensed to conduct business in the state of Georgia.

6.	At all times relevant to this action, Defendant conducted business, maintained facilities, and derived substantial revenue in the State of Georgia and is subject to the jurisdiction and venue of this Court.

7.	Defendant may be served with process by serving a copy of the Complaint and Summons on its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## ADMINISTRATIVE PREREQUISITES

8. Plaintiff has satisfied all administrative prerequisites to perfect her claims under Title VII. Specifically, she timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

9. Plaintiff has now received the Notice of Right to Sue for her claims under Title VII within the last ninety (90) days.

## FACTUAL ALLEGATIONS

### I. Background on Knapp Inc.

10. Defendant Knapp Inc. develops and manufactures intelligent warehouse systems for efficient warehouse automation.

11. Knapp Inc. is the U.S. subsidiary of Knapp AG, the parent company of over forty (40) group members.

12. Knapp AG has operations all over the world and is headquartered in Hart bei Graz, Austria.

13. Knapp AG has approximately 7,300 employees.

14. Knapp Inc. has operations in the United States as well as several provinces in Canada.

15. Knapp Inc. has active contracts in approximately 30 states within the United States and five (5) Canadian Provinces.

**II.     Plaintiff is Hired by Knapp Inc. as a Tax Specialist.**

16.    On or about November 1, 2021, Plaintiff was hired as a Tax Specialist by Knapp.

17.    Plaintiff is an African American female.

18.    During her employment with Knapp, Plaintiff reported directly to Andrea Buckel (Caucasian), Senior Director of Finance and Controlling. Ms. Buckel reported to Clemens Bauer (Caucasian), Chief Financial Officer.

19.    Ms. Buckel has very little experience in federal tax, aside from some college credits in Accounting.

20.    Prior to Plaintiff's arrival at Knapp Inc., the Company had never had a Tax Specialist.

**III.    Plaintiff is Quickly Promoted to Tax Manager Based on Her Stellar Performance.**

21.    Plaintiff was the tax subject matter expert for the Company.

22.    Plaintiff was the lead advisor on U.S. tax requirements.

23.    Plaintiff provided tax training and guidance to high-level executives and to various departments.

24.    From the beginning of Plaintiff's employment with Knapp Inc., the Company heavily leaned on her for tax guidance, and she worked closely with the Senior Director of Finance and Controlling, CFO, CEO, and legal counsel.

25. Within six months, in April 2022, Plaintiff was promoted to Tax Manager based on her stellar performance.

26. Plaintiff was never notified of any performance deficiencies. In fact, Plaintiff was asked to participate in high stakes meetings and advise leadership on existing tax matters, was sent to Austria to meet with senior leadership, and was named Employee of the Month.

27. Plaintiff was consistently praised for her performance.

28. Plaintiff was never given a single performance review throughout her entire tenure at Knapp Inc.

29. Knapp Inc. has a complex structure with several challenging tax issues. Plaintiff developed procedures and processes, and built a tax department.

30. Plaintiff oversaw domestic and international sales and use taxes (indirect taxes), property taxes, and other federal and state income taxes.

31. In addition, Plaintiff handled all tax audits, tax planning and tax controversy for Knapp Inc.

**IV.   Plaintiff is Subjected to Disparate Treatment and Disparate Pay Based on Her Race.**

32. Throughout Plaintiff's employment at Knapp Inc., she and other African American employees were grossly undercompensated.

33. At the time of Plaintiff's termination, her base salary was $102,000 (which was an increase from her starting salary).

34. A tax individual with Plaintiff's skillset, that leads a large organization, in Atlanta, typically has a base salary of $150,000-$210,000.

35. Knapp Inc. valued and paid their Caucasian employees more than their African American employees.

36. For example, in June 2022, Plaintiff hired her first direct report, Akua Shuler (African American).  Ms. Shuler was hired with a base salary of $60,000.

37. On several occasions, Plaintiff spoke to Ms. Buckel and Kevin Richardson (Caucasian), Vice President of Human Resources, regarding the need to increase Ms. Shuler's pay and promote her to the position of Senior Tax Specialist.

38. Plaintiff was told that she could not promote Ms. Shuler and that she was only allowed to give her yearly raises of between one to three percent.

39. Meanwhile, Ms. Shuler was training and outperforming the Caucasian members of the tax team, yet they were making more than her.

40. Additionally, Knapp Inc. subjected Plaintiff to other discriminatory behaviors.

41. For example, the Company has several "flex offices" which, most days, remain unused.

42. Plaintiff's role required her to read contracts and tax codes, and prepare reliable write-ups for various purposes.

43. These tasks required her to focus without distraction, which is hard to do in an open cubicle.

44. Plaintiff was verbally reprimanded for alleged "over-use" of an empty flex office.

45. Prior to this, there had been no limit on how often employees could reserve these rooms. There were 5-7 of these rooms across the building and they remained completely vacant most days.

46. At no time was Plaintiff in a flex office that had been booked by another employee.

47. Mr. Richardson told Plaintiff that the employees at Knapp Inc. did not like the appearance of her working in an office. However, those offices were meant for working.

48. If Plaintiff had been a Caucasian male, the situation would have been different. The Company did not like the appearance of an African American woman in an office as they felt her place was on the main floor in a cubicle.

49. Ms. Buckel showed clear favoritism for the Caucasian employees.

50. For months, Plaintiff asked Ms. Buckel to train her on sales tax adjustments, yet Ms. Buckel continued to brush her under the rug.

51. When a Caucasian male was hired (who reported to Plaintiff), Ms. Buckel scheduled a training with him on the sales tax adjustments.

52. Plaintiff asked Ms. Buckel why she would schedule this training with the new hire when he reported to Plaintiff.

53. Ms. Buckel then cancelled the training for the new hire and said she would train the new hire and Plaintiff at the same time. However, she never scheduled that training.

54. Additionally, Ms. Buckel took this new hire to meet the sales team and did not invite Plaintiff even though Plaintiff had never been formally introduced to the sales team.

**V.  Plaintiff Raised Concerns to Human Resources Regarding Race Discrimination.**

55. On September 28, 2023, Plaintiff verbally raised concerns of race discrimination, including discriminatory pay, and also retaliation under the Taxpayer First Act, specifically the retaliation she had experienced for raising concerns of tax fraud and her refusal to participate in fraudulent tax activity.

56. Mr. Richardson asked Plaintiff to put her concerns in writing.

57. On October 2 and 4, 2023, Plaintiff submitted a very detailed three-part written complaint regarding these concerns.

## VI. Plaintiff is Terminated for Reasons that are Nonsensical a Mere Seven Days After She Submitted a Written Complaint to Human Resources Regarding Race Discrimination.

58. On October 9, 2023, a mere seven (7) days after Plaintiff first submitted the written complaint to Human Resources regarding race discrimination, Plaintiff was abruptly terminated.

59. Plaintiff was given three reasons for her termination, none of which justified disciplinary action, much less a termination.

60. The first reason the Company gave for terminating Plaintiff was that she was sending Company documents to herself.

61. Notably, Ms. Buckel told Plaintiff that she was the one that reached out to IT for a report of Plaintiff's email activity.

62. Ms. Buckel requested this report because she was looking for a reason to terminate Plaintiff.

63. In fact, Plaintiff—and other individuals at the Company—had been sending themselves documents for a long time.

64. Plaintiff worked long hours and frequently completed some of her assignments on her personal computer.

9

65. In addition, Plaintiff knew that the Company was engaging in unlawful tax fraud and that it would not allow her to comply with the law. Therefore, she needed documentation in order to report the Company's wrongdoing to the proper authorities.

66. The second reason the Company gave for Plaintiff's termination was that she allegedly asked the Chief Financial Officer, Clemens Bauer, to sign a tax return when she was not confident in the numbers being reported.

67. However, prior to Plaintiff asking Mr. Bauer to sign the Canadian Tax Return, Plaintiff expressed her concern to both Mr. Bauer and Ms. Buckel regarding the loss showing for the SAQ project.

68. It was Mr. Bauer and Ms. Buckel that were responsible for the accuracy of those numbers.

69. They did not provide Plaintiff with an explanation of those numbers despite her questions.

70. Plaintiff reported the numbers to the best of her ability with the information given to her.

71. Mr. Bauer reviewed the return, asked no follow-up questions, and merely signed the return.

72. The reality is that Mr. Bauer and Ms. Buckel were upset because this was the first time the Company had ever properly reported permanent establishments in Canada in ten years and they were desperately trying to prevent her from filing that return.

73. In addition, Plaintiff made clear that her next step was to make sure the U.S. income tax return was properly filed with all appropriate intercompany information.

74. The last reason the Company gave for Plaintiff's termination was that she was allegedly "insubordinate" and "maliciously disobedient" with regard to an incident that happened with a tax auditor.

75. To provide background on that incident, Ms. Buckel had attempted to defraud the province of British Columbia by filing a fraudulent provincial sales tax return—a filing that she had orchestrated.

76. The province of British Columbia selected that return for audit.

77. When the auditor reached out to Plaintiff, Plaintiff sent the auditor's request to Ms. Buckel for her response since Plaintiff was not involved in that filing.

78. Ms. Buckel sent Plaintiff a message asking how the auditor had gotten Plaintiff's contact information, which was a ridiculous question since Plaintiff was

the point person for all audits, and Ms. Buckel had never asked this question in the past.

79. The reality is that Ms. Buckel thought that Plaintiff had reached out to the Investigator because she knew that Plaintiff strongly disagreed with her actions of creating a fraudulent tax return.

80. However, to answer Ms. Buckel's question, Plaintiff replied to the auditor, with a cc to Ms. Buckel, and asked the auditor to explain how he had obtained her contact information for the audit. This is the alleged reason why Ms. Buckel thought Plaintiff was "insinuating to an auditor" that she was trying to prevent their communication. However, Plaintiff was simply getting an answer to the question that was asked of her.

## COUNT I
**Race Discrimination in Violation of Section 1981**

81. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

82. Plaintiff and Defendant Knapp Inc. were parties to an employment agreement under which, *inter alia*, Plaintiff worked for Defendant Knapp Inc. and Plaintiff was compensated for her work.

83. Plaintiff performed her contractual obligations.

84. Section 1981 prohibits Defendant from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of her employment contract with Defendant.

85. Defendant violated Plaintiff's rights under Section 1981 on the basis of his race (African American) by subjecting her to disparate treatment, disparate pay, and termination of her employment.

86. Defendant treated similarly situated Caucasian employees more favorably.

87. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, out of pocket expenses, attorney's fees and costs, humiliation, and other indignities.

88. Defendant undertook its actions intentionally and maliciously with respect to Plaintiff and her federally protected rights and undertook its conduct recklessly with respect to Plaintiff and her federally protected rights.

89. Plaintiff is entitled to damages against Defendant Knapp, including back pay, compensatory damages, punitive damages, attorneys' fees, and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

## COUNT II
### Retaliation in Violation of Section 1981

90. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

91. Plaintiff and Defendant Knapp Inc. were parties to an employment agreement under which, *inter alia*, Plaintiff worked for Defendant Knapp Inc. and Plaintiff was compensated for her work.

92. Plaintiff performed her contractual obligations.

93. Plaintiff is a African American citizen who engaged in statutorily protected activity by objecting to and complaining about race discrimination prohibited by Section 1981.

94. Section 1981 prohibits Defendant Knapp Inc. from retaliating against Plaintiff because she opposed, objected to, and complained against race discrimination prohibited by Section 1981.

95. Defendant Knapp Inc. subjected Plaintiff to retaliation by terminating her employment soon after she complained about illegal race discrimination.

96. The above-pled retaliatory conduct towards Plaintiff constitutes unlawful retaliation in violation of Section 1981.

97. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and

benefits, out of pocket expenses, attorney's fees and costs, humiliation, and other indignities.

98.     Defendant undertook its actions intentionally and maliciously with respect to Plaintiff and her federally protected rights and undertook its conduct recklessly with respect to Plaintiff and her federally protected rights.

99.     Plaintiff is entitled to damages against Defendant Knapp Inc., including back pay, compensatory damages, punitive damages, attorneys' fees, and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

## COUNT III
### Race Discrimination in Violation of Title VII

100.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

101.    Plaintiff is a member of a protected class in that she is African American.

102.    At all relevant times, Plaintiff was an "employee" of Defendant as that term is defined by Title VII, 42 U.S.C. §2000e *et seq*.

103.    At all relevant times, Defendant was an "employer" as that term is defined by Title VII, 42 U.S.C. §2000e *et seq*.

104. Defendant discriminated against Plaintiff on the basis of her race (African American) by subjecting her to disparate treatment, disparate pay, and termination of her employment in violation of Title VII.

105. Defendant treated similarly situated Caucasian employees more favorably.

106. The actions of Defendant in subjecting Plaintiff to the above-pled adverse actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of her federally protected rights.

107. As a direct and proximate cause of Defendant's unlawful employment actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

108. Plaintiff is entitled to recover her lost wages and economic benefits of her employment, compensatory damages for emotional distress, front pay, and all other legal and equitable remedies provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT IV
**Retaliation in Violation of Title VII**

109. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

110. Plaintiff is an African American citizen who engaged in statutorily protected activity by objecting to and complaining about race discrimination prohibited by Title VII.

111. Plaintiff engaged in protected conduct under Title VII by raising concerns of race discrimination to Human Resources.

112. Title VII prohibits Defendant from retaliating against Plaintiff because she opposed, objected to, and complained against race discrimination prohibited by Title VII.

113. Defendant retaliated against Plaintiff for engaging in protected conduct in violation of Title VII by taking adverse actions against her, including but not limited to, terminating her employment.

114. The above-pled retaliatory conduct towards Plaintiff constitutes unlawful retaliation in violation of Title VII.

115. The actions of Defendant in subjecting Plaintiff to the above-pled adverse actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of her federally protected rights.

116. As a direct and proximate cause of Defendant's unlawful employment actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

117. Plaintiff is entitled to recover her lost wages and economic benefits of her employment, compensatory damages for emotional distress, front pay, and all other legal and equitable remedies provided for by Title VII and all statutes providing for relief for violations of Title VII.

**WHEREFORE,** Plaintiff demands a TRIAL BY JURY and the following relief:

(a) declare that Defendant has violated Plaintiff's rights under the federal statute and state laws listed above;

(b) permanently enjoin Defendant from violating, in the future, Plaintiff's rights under the federal statute and state laws listed above;

(c) award Plaintiff her back pay, plus interest;

(d) award Plaintiff her lost benefits, plus interest;

(e) award Plaintiff prejudgment interest as required by law;

(f) award Plaintiff special damages;

(g) award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(h) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(i) award Plaintiff punitive damages against Defendant sufficient to punish it for its unlawful conduct and deter it from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(j) award Plaintiff reasonable attorneys' fees and expenses; and

(k) grant such additional relief as may be just.

Respectfully submitted, this 1st day of July, 2024.

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
LEE MEIER LAW FIRM
695 Pylant Street NE, Suite 105
Atlanta, Georgia 30306
Telephone: (404) 301-8973
jlee@leemeier.law

**COUNSEL FOR PLAINTIFF**